

### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Miguel Quinones | § | |
|     Plaintiff | § | Case No.: |
| v. | § | |
| Palisades Collection, LLC, | § | |
| Pressler & Pressler, LLP, | § | |
| Houslanger & Associates, PLLC, | § | |
| Todd Houslanger, | § | |
|     Defendants | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, MIGUEL QUINONES brings suit against Defendants Palisades Collection, LLC, Houslanger & Associates, PLLC, Todd Houslanger, Pressler & Pressler, LLP, Executive Attorney Services, LLP, and Harry Torres for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (the "FDCPA"), and N.Y. Gen. Bus. Law § 349 et seq., and in support would show as follows.

### JURISDICTION AND VENUE

1.    The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 USC. 1692, et seq., (FDCPA). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law, the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's claims state law claims Plaintiff because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.      Venue in this District is proper because all or a substantial part of the events or omissions giving rise to the claims occurred in New York County, New York.

## PARTIES

3.      Plaintiff is an individual who resides in Union County, New Jersey.

4.      Defendant PALISADES COLLECTION, LLC ("Palisades") is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 210 Sylvan Ave Englewood Cliffs, NJ 07632. Said Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York.

5.      Defendant Palisades is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that it purchases charged off consumer accounts and attempts to collect on them by causing thousands of collection letters to be sent and thousands of collection lawsuits to be filed.

6.      Defendant HOUSLANGER & ASSOCIATES, PLLC ("the PLLC") is a professional service limited liability company organized under the laws of the State of New York, with its principal place of business at 372 New York Ave., Huntington, NY 11743.

7.      Defendant TODD HOUSLANGER is an individual who, on information and belief, is a resident of the State of New York.  Houslanger, an attorney, is the sole owner and operator of the PLLC.

8.      The PLLC and Houslanger will be referred to collectively as the "Houslanger Defendants."

9.      Defendant PRESSLER & PRESSLER, LLP ("Pressler") is a New Jersey limited liability partnership with its principal place of business at 16 Wing Drive, Cedar Knolls, NJ, 07927.  Pressler also maintains offices at 305 Broadway, 9th Floor, New York, New York,

among other locations.

## FACTS

10.     On or about January 5, 2006, Palisades, through its attorney Pressler filed a state court collection lawsuit in New York County Civil Court for default on an AT&T Wireless account, *Palisades Collection, LLC v. Miguel Quinones*, No. CV-627/06 (N.Y. Civ. Ct.) ("the collection lawsuit").

11.     On June 26, 2006 a judgment was issued against Mr. Quinones for the above-mentioned action in the amount of $1,740.72 based on a false affidavit of service submitted by Palisades through Pressler.

12.     Mr. Quinones never had a cell phone account with AT&T.

13.     Mr. Quinones is just one of the hundreds of consumers that Palisades, through Pressler, sues for putative AT&T accounts that they never had.

14.     Mr. Quinones is also just one of the hundreds of consumers that Palisades, through Pressler, has obtained default judgments against based on a false affidavits of service.

15.     Indeed, Palisades and Pressler are currently subject to a class action, *Bernhart et al v. Asta Funding, Inc., et al.*, Case 1:13-cv-02935, Southern District of New York, for systematically filing collection lawsuits for AT&T Wireless accounts not owed and obtaining default judgments based on the systematic use of false affidavits of service.

16.     One information and belief, the process servers used by Palisades, through Pressler, are only paid for "completed" affidavits of service.

17.     Moreover, Palisades, through Pressler, knowingly turns a blind eye to the sewer service of their process servers.

18.     For example, in *Ortiz v. Palisade Collection, L.L.C.   et al*, Case 1:12-cv-03464-PAE,

3

Southern District of New York, Pressler admitted it (1) does not keep track by name of process server or name of process serving agency cases where the consumer alleges she was never served, (2) does not keep track by name of process server or name of process serving agency cases where consumers file orders to show cause to vacate default judgment alleging they were not actually served, and (3) does not keep track by name of process server or name of process serving agency cases where consumers obtained orders to show cause to vacate a default judgment based on a failure to actually be served.

19.     As in the case at bar, in *Ortiz* Palisades, through Pressler, obtained a default judgment based on a sewer service affidavit for an AT&T account that the consumer never had. As in the case at bar, in *Ortiz* the consumer never had any account with AT&T.

20.     At the very least, Pressler knowingly turns a blind eye to the sewer service of its process servers in an attempt to create a shield of plausible deniability for the systematic use of false affidavits to secure default judgments that enabled them to freeze bank accounts, threaten to garnish wages, or pressure individuals into settlements.

21.     Defendants retained a process service company called Executive Attorney Service to serve the summons and complaint on Mr. Quinones.

22.     On information and belief, Defendants' arrangement with Executive Attorney Service ("EAS") was that Defendants would pay only for completed service of process.

23.     The process server for EAS, Harry Torres, swore before a notary that on January 9, 2006, he served the Summons and Verified Complaint on Miguel Quinones by delivering a copy of the documents to a "Ray" Quinones at 550 W 171st Street, Apt 3D, New York, NY 10032.

24.     Harry Torres attested that Ray Quinones was a "person of suitable age and discretion."

4

Mr. Torres further attested that Ray stated that that Miguel Quinones resided at the address, and Ray stated the Miguel Quinones was not in active military service.

25.     Miguel Quinones does not have a brother named Ray. The process server simply made up the name of "Ray Quinones."  As "Ray" does not exist, he could not have confirmed the address of Miguel Quinones, or confirmed that he was not in the military.

26.     Further, Mr. Quinones has not lived at 550 W 171st Street, Apt 3D, New York, NY since 2004, two years before the alleged date of service.

27.     Mr. Quinones never received the summons or complaint, neither by service nor by mail.

28.     On September 5, 2012 checked the balance available in his Bank of America account, Mr. Quinones and saw that $3,401.44 had been withdrawn. Mr. Quinones immediately called the bank to find out what happened. The bank informed Mr. Quinones that his bank account had been restrained and the money withdrawn by the law firm Houslanger & Associates, PLLC ("the PLLC") to collect on a judgment default judgment Palisades obtained based on the false affidavit of service.

29.     September 5, 2012 was the first time Mr. Quinones knew or could reasonably have known about the Palisades collection lawsuit or the default judgment.

30.     The account was restrained based on an information subpoena and restraining notice dated August 28, 2012 that was served on Bank of America. Todd Houslanger, an attorney and sole shareholder of the PLLC, signed the information subpoena and restraining notice.

31.     Bank of America gave Mr. Quinones the telephone number for the PLLC and the "reference number." This is the first time Mr. Quinones had any knowledge of the PLLC.

32.     On September 5, 2012 Mr. Quinones called the PLLC and spoke with an individual who identified himself as Gary Higgs. Mr. Higgs told Mr. Quinones that the PLLC seized his bank

account based on a judgment seeking to collect on a cell phone account with AT&T Wireless. Mr. Quinones informed Mr. Higgs that he never had an account with AT&T Wireless. Mr. Higgs instructed Mr. Quinones to write a letter of dispute, fax it to the PLLC, and they would "investigate." Mr. Quinones asked Mr. Higgs how he was going to be able to pay his bills if he could not access his account. Mr. Higgs said not to worry, that the PLLC would pay his bills.

33.     That same day, September 5, 2012, Mr. Quinones wrote a letter of dispute explaining he never had an account with AT&T Wireless.

34.     Mr. Quinones called AT&T directly to see what was going on. AT&T informed Mr. Quinones that they had no record of Mr. Quinones having a cell phone account (or even a landline account) with AT&T.  They also denied having any records of an account with his name or social security number.

35.     As instructed, Mr. Quinones faxed the dispute letter to the PLLC on September 6, 2012. Mr. Quinones also informed the PLLC what AT&T had stated, namely that they had no record of him ever having an account with AT&T.

36.     The PLLC ignored the letter they instructed Mr. Quinones to write.

37.     Needing access to his bank account to pay his bills, on September 21, 2012 Mr. Quinones filed a *pro se* Order to Show Cause in New York Civil Court to release the account and have his money returned.

38.     On September 21, 2012, New York Civil Court Judge Chan signed the Order to Show Cause, and set a hearing date for October 24, 2012.

39.     On September 22, 2012, Mr. Quinones wrote a letter to Houslanger & Associates requesting a copy of the judgment.

40.     In the courthouse on October 24, 2012, Palisades, through an attorney for the PLLC,

Last saved 8 23 2013 1:26 PM

attempted to intimidate Mr. Quinones to get him to drop his request to vacate the judgment. Specifically, the attorney falsely stated to Mr. Quinones that he would not be able to vacate the default judgment because it had been entered more than a year prior. Palisades, through the PLLC, intentionally misrepresented Mr. Quinones' rights to him for the specific reason of attempting to prevent him from going before the judge and presenting his order to show cause.

41.     At the October 24, 2012 hearing the Court ordered lifted the restraints on Mr. Quinones' accounts to be lifted "immediately." The Court set a hearing date of November 27, 2012 to resolve the balance of the issues of the Order to Show Cause, specifically the vacating of the default judgment and the dismissal of the case for lack of personal jurisdiction given the lack of service.

42.     The PLLC, under the signature of Houslanger, (collectively the "Houslanger Defendants") mailed a purported "Notice of Discontinuance" to Mr. Quinones. The certificate of mailing was dated November 21, 2012. Absent certain circumstances not applicable, a party cannot unitarily "discontinue" a case in New York Civil Court. Therefore, the document would have no legal effect.

43.     Moreover, the Houslanger Defendants never filed the notice with the Court; it is not in the Court file. Therefore, the purpose of mailing the purported Notice of Discontinuance was to dupe Mr. Quinones not to attend the hearing to vacate the default judgment and dismiss the collection case so that the motion would be denied for no appearance. In that event, Palisades, through the Houslanger Defendants, would continue to collect on the judgment.

44.     Fortunately, Mr. Quinones attended the November 27, 2012 hearing. The PLLC did not announce an appearance at the hearing. The court then vacated the default judgment, again vacated all restraints, and dismissed the case.

45.     No one has refunded the $100 bank fee charged for the bank account garnishment.

46.     Mr. Quinones demand that Palisades, through the PLLC, reimburse him for the bank fee but

7

they ignored the demand.

47.     On information and belief, the Houslanger Defendants regularly attempt to collect on judgments for Palisades based on default judgments on AT&T wireless accounts never owed effectuated by sewer service.

48.     Palisades, through the Houslanger Defendants and other debt collection law firms, regularly oppose orders to show cause to vacate default judgments based on debts for AT&T accounts never owed and entered based on false affidavits of service. As such, Palisades, through the Houslanger Defendants and other debt collection law firms, attempt to retain the benefits of said default judgments after being placed on notice (e.g. through the orders to show cause, and letters and calls from consumers) that the AT&T debts were never owed and that the affidavits of service were false.

49.     Defendants inflicted actual damages on Mr. Quinones. Without limitation, these damages include the anger, frustration, and emotional distress of having his bank account retrained for a debt he never owed based on a false affidavit of service; the loss of use of the money during the time restrained; the bank fees incurred; the loss of time and expenses incurred for having to repeatedly go to court to seek the court file, to file motions, and to attend hearings to have lifted;  and the loss of time and expenses incurred (as well as the anger and frustration) for having to deal with the debt collectors and the putative original creditor in resolving the sewer service judgment on a debt never owed.

## COUNT # 1: VIOLATIONS OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (AS TO ALL DEFENDANTS EXCEPT EXECUTIVE ATTORNEY SERVICES, INC. AND HARRY TORRES)

50.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

51.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

8

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

52.     In enacting the FDCPA, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," and that "[e]xisitng laws and procedures for redressing these injuries are inadequate to protect consumers." 15 U.S.C. § 1692(a) and 1692(b). Accordingly, Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[,]" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir.2002), with the purpose of "limiting the suffering and anguish often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996) (internal quotation marks omitted). "Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope." *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir.2002).

53.     See also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir.2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope").

54.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. N.Y. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts,

who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.")

55.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because he was alleged to owe a debt.

56.     The obligation alleged by Defendants to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

57.     Palisades, Pressler, and the Houslanger Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6).

58.     The Houslanger Defendants are debt collectors because they send thousands of collection letters and file thousands of collection lawsuits as attorneys for plaintiffs seeking to collect alleged consumer debts. Therefore the Houslanger Defendants regularly attempt to collect debts alleged to be due to another, and that is their primary purpose.

59.     Todd Houslanger is also a debt collector because he regularly collects debts through the PLLC. Houslanger is the owner and operator of the PLLC. Houslanger signs the pleadings, discovery instruments, and collection letters for the PLLC. On information and belief, Houslanger made the decisions to take the actions that form the basis of this complaint. On information and belief, Houslanger exercised control over the operation and management of the collection activities of the PLLC.

60.     Palisades is a debt collector because it purchases defaulted consumer accounts and attempts to collect on them by sending thousands of collection letters and filing thousands of collection lawsuits. Therefore Palisades regularly attempts to collect post-default consumer debts, directly or indirectly, and that is its primary purpose.

61.     Pressler is a debt collector because it sends thousands of collection letters and files thousands of collection lawsuits as attorneys for plaintiffs seeking to collect alleged consumer debts. Therefore Pressler regularly attempts to collect debts alleged to be due to another, and that is their primary purpose.

62.     The actions of the Defendants enumerated in the above statement of facts constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

63.     Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount or legal status of the debt; threatening to take and actually taking an action prohibited by law; using any false representations or deceptive means; using unfair or unconscionable means; and collecting any amount that is not expressly permitted by law or contract.

64.     A prevailing Plaintiff in an FDCPA action is entitled to actual damages, additional statutory damages of up to $1,000.00, and mandatory attorney's fees and costs, and these are so sought.

## Count # 2: N.Y. Gen. Bus. Law § 349 *et seq.*

65.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

66.     New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state. . . ."

67.     An individual "injured by reason of any violation of this section may bring an action in his

own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

68.     As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses.  This includes filing hundreds of lawsuits to collect debts on AT&T wireless accounts not owed by consumers, and engaging in motion practice regarding the same, such as opposing orders to show cause to vacate default judgments; systematically using process servers who do not actually serve process but instead lie about serving process; using hundreds of false affidavits of service to obtain default judgments that enabled Defendants to freeze bank accounts, threaten to garnish wages, or pressure consumers into settlements; regularly using the false affidavits of service to oppose orders to show cause to vacate said default judgments.

69.     Defendants' conduct has a broad impact on consumers at large.

70.     Defendants' conduct impacts the thousands of consumers in the state of New York who have been sued for AT&T wireless accounts not owed; who have suffered default judgments rendered against them based on false affidavits of service; default judgments known to be based on debts not owed on false affidavits of service that enabled Defendants to freeze bank accounts, threaten to garnish wages, or pressure individuals into settlements; and who have had opposed their orders to show cause to vacate said default judgments.

71.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq.*, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, as to recover actual and treble damages, costs and attorney's fees.

72.     As previously discussed, Defendants inflicted actual damages on Mr. Quinones. Without

limitation, these damages include the anger, frustration, and emotional distress of having his bank account retrained for a debt he never owed based on a false affidavit of service; the loss of use of the money during the time restrained; the bank fees incurred; the loss of time and expenses incurred for having to repeatedly go to court to seek the court file, to file motions, and to attend hearings to have lifted;  and the loss of time and expenses incurred (as well as the anger and frustration) for having to deal with the debt collectors and the putative original creditor in resolving the sewer service judgment on a debt never owed.

### Count # 3: N.Y. Judiciary Law § 487 *et seq. (as to Pressler and the Houslanger Defendants)*

73.    N.Y. Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

74.    Plaintiff brings this New York Judiciary Law § 487 claim against Pressler and the Houslanger Defendants, collectively the "Law Firm Defendants."

75.    The Law Firm Defendants violated N.Y. Judiciary Law § 487 by filing hundreds of lawsuits to collect debts on AT&T wireless accounts not owed by consumers, and/or engaging in motion practice regarding the same, such as opposing orders to show cause to vacate default judgments; systematically using process servers who do not actually serve process but instead lie about serving process; using hundreds of false affidavits of service to obtain default judgments that enabled Defendants to freeze bank accounts, threaten to garnish wages, or pressure consumers into settlements; regularly using the false affidavits of service to oppose orders to show cause to vacate those default judgments based on false affidavits of service for AT&T accounts not owed.

76.    Plaintiff seeks actual damages, treble damages, and attorneys' fees and costs for the Law Firm Defendants violations of N.Y. Judiciary Law § 487.

Last saved 8.23.2013 1:26 PM

## JURY DEMAND

77.   Plaintiff demands a trial by jury.

## PRAYER

78.   WHEREFORE, Plaintiff requests the following relief:

   a.   A declaration that all Defendants have committed the violations of law alleged in this action;

   b.   An order enjoining and directing all Defendants to cease violating N.Y. Gen. Bus. Law § 349 *et seq.*;

   c.   Statutory damages under 15 U.S.C. § 1692k and N.Y. Gen. Bus. Law § 349(h) against all Defendants;

   d.   Treble damages under N.Y. Gen. Bus. Law § 349 against all Defendants;

   e.   Treble damages under N.Y. Judiciary Law § 487 against the Law Firm Defendants;

   f.   An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and N.Y. Gen. Bus. Law § 349 against all Defendants;

   g.   A judgment for actual, statutory, and treble damages;

   h.   Prejudgment and post judgment interest as allowed by law

   i.   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        August 23, 2013

   Respectfully submitted,

14

Ahmad Keshavarz
Plaintiff's Attorneys
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com